# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DERRICK SCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 19-1038-WS-C |
| ) | |
| ILA LOCAL 140 INTERNATIONAL ) | |
| LONGSHOREMEN'S ASSOCIATION, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter is before the Court on the defendants' motion to dismiss pursuant to Rule 12(b)(6). (Doc. 18). The plaintiff has filed a response and the defendants a reply, (Docs. 20, 21), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

## BACKGROUND

According to the amended complaint, (Doc. 14), the plaintiff was a member of the defendant labor organization ("Local 1410"), whose president is co-defendant Mark Bass. In January 2019, the plaintiff was involved in a minor incident of horseplay with another union member. Several days later, he returned to the hiring center and was instructed by Bass to leave until it was determined when he could return to work. A week later, the plaintiff returned to the hiring center to file a grievance and received a letter from Bass stating that Local 1410 and the employer had agreed that, for just cause as defined in the collective bargaining agreement ("CBA"), the plaintiff was permanently ineligible for hire by any ILA employer. The plaintiff did not receive notice of any charges or of

any hearing, did not know of the hearing, and did not attend it; nor were his interests represented at the hearing. The plaintiff was not fired for just cause.

The defendant promptly filed a grievance against both the employer and the union, alleging discrimination and retaliation. He also requested Local 1410's vice president to represent him in opposing his ineligibility for hire. The vice president attempted to obtain a second hearing and/or appeal but was told there would be none because the plaintiff failed to attend the first hearing. This information was not relayed to the plaintiff. When, in October 2019, he hand-delivered a grievance against the union alleging improper representation, he was notified for the first time that he was not a member of Local 1410; the plaintiff maintains he was a union member throughout this process.

The amended complaint asserts three claims.[1] Count One alleges that the defendants violated 29 U.S.C. § 411(a)(5) by failing to provide certain procedural safeguards before disciplining him. Count Two alleges that Bass violated 29 U.S.C. § 529 by colluding with the employer to violate the plaintiff's due process rights and to punish the plaintiff for his support of Bass's political rival. Count Three alleges that Local 1410 violated its duty of fair representation with regard to the hearing, the plaintiff's appeal, and the plaintiff's grievances.

## DISCUSSION

The defendants challenge the plausibility of certain allegations of the amended complaint. To survive dismissal under Rule 12(b)(6), a complaint must first satisfy the pleading requirements of Rule 8(a)(2). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2). The rule "requires more than labels and

---

[1] Because the plaintiff's claims are unnumbered, the Court assigns them numbers in the order they appear in the amended complaint.

conclusions, and a formulaic recitation of the elements of a cause of action will not" satisfy that rule. *Twombly*, 550 U.S. at 555. There must in addition be a pleading of facts. Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id*. That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotes omitted). A complaint lacking "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" will not "survive a motion to dismiss." *Id*. But so long as the plausibility standard is met, the complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes omitted).

**A. Count One.**

"No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(a)(5). Count One invokes this provision and describes it as "requir[ing] a union to provide certain enumerated procedural safeguards before it [*i.e.*, the union] may suspend, expel or otherwise discipline a member." (Doc. 14 at 4).

Despite these allegations, the defendants assume the Section 411(a)(5) claim addresses only the agreement between Local 1410 and the employer to make the plaintiff permanently ineligible for hire. (Doc. 18 at 9). Because Count One actually challenges the plaintiff's removal from the union, (Doc. 14 at 4; Doc. 20 at 3), it fits squarely within the scope of Section 411(a)(5).[2]

In their reply brief, the defendants for the first time argue that the amended complaint fails to allege plausibly that the plaintiff was expelled from the union. (Doc. 21 at 2-4). "District courts, including this one, ordinarily do not consider arguments raised for the first time on reply." *Clarke v. Tannin, Inc.*, 301 F. Supp. 3d 1150, 1173 (S.D. Ala. 2018). The defendants offer, and the Court discerns, no reason to depart from the general rule. The scope of Count One was plain from the face of the amended complaint, so the defendants' suggestion that they were unfairly surprised to learn the claim addresses the plaintiff's removal from the union does not hold water.

Even were the Court to consider the defendants' belated argument, it would fail. The amended complaint expressly alleges that the plaintiff was a member of Local 1410 at the time of the horseplay incident in January 2019, at the time he was told he was not a union member in October 2019, and "[t]hroughout th[e] process" in between. (Doc. 14 at 2, 3). The defendants, however, insist that, to satisfy *Twombly*, the plaintiff was required to plead "specific facts" demonstrating that he "fulfilled the membership requirements" of Local 1410 and that he never "voluntarily withdr[ew]" from the union. They continue that the plaintiff was also required to plead specific facts regarding "the basis of" Local 1410's "understanding that Plaintiff was not a member." (Doc. 21 at 2-3 (internal quotes omitted)).

Let's put that in the context of an employment discrimination action. By the defendants' reasoning, a plaintiff could not survive a motion to dismiss by

---

[2] To the extent Count One purports to extend to the ineligibility determination, it fails for reasons set forth in Part B.

4

alleging he was employed by the defendant and later fired (for an impermissible reason); he would have to allege specific facts showing that he really had been hired (a congratulatory letter? an employee handbook?), that he had never quit (a recent pay stub?), and that he had not misunderstood the employer but that he really had been fired (a termination letter?).

Unsurprisingly, the defendants offer no authority in support of their reading of the plausibility standard. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. As this Court has held, "the plaintiffs need not support those [pleaded] facts with secondary facts, tertiary facts, ad infinitum in order to satisfy Rule 8(a)(2)." *Howard v. Bayrock Mortgage Corp.*, 2010 WL 4628120 at *3 (S.D. Ala. 2010). This proposition flows naturally from the principle that the plaintiff "need not prove his case on the pleadings – his Amended Complaint must merely provide enough factual material to raise a reasonable inference, and thus a plausible claim, that" the defendants expelled him from the union (without providing the procedural safeguards Section 411(a)(5) requires). *Speaker v. United States Department of Health and Human Services Centers for Disease Control and Prevention,* 623 F.3d 1371, 1386 (11th Cir. 2010). When a plaintiff alleges he was a union member throughout a specific time frame, that the defendants treated him as a member,[3] and that the defendants without warning announced he was not a member, there is far more than a reasonable inference (and thus a plausible claim) that the plaintiff was a union member and that he was involuntarily removed from the union.

**B. Count Two.**

"It shall be unlawful for any labor organization, or any officer … of a labor organization, … to fine, suspend, expel or otherwise discipline any of its members

---

[3] Including by agreeing with the employer that the plaintiff violated the CBA and by seeking to obtain a second hearing and/or appeal for him.

for exercising any right to which he is entitled under the provisions of this chapter." 29 U.S.C. § 529. Count Two alleges that Bass violated this provision by "collud[ing] with the applicable employers to violate the Plaintiff's substantive due process rights, and to arbitrarily punish the plaintiff due to the Plaintiff's support of a political rival of Mr. Bass." (Doc. 14 at 4). Because Count Two is based on Bass's "collu[sion]" with the employer, and because the only alleged conduct of the employer is its agreement with Local 1410 that the plaintiff be permanently ineligible for hire, it is clear that the amended complaint limits Count Two to that decision.

The agreement to which the amended complaint refers was one reached, unanimously, between the employer representatives and the union representatives on a grievance committee, as provided by the CBA. (Doc. 18-2 at 4).[4] The Court agrees with the defendants that Section 529 does not reach this situation. (Doc. 18 at 9-12).

Section 411 is styled by Congress as a "bill of rights." Subsection (a)(1) protects the right to attend union meetings, to participate in deliberations and voting at such meetings, to nominate candidates, and to vote in elections and referenda. Subsection (a)(2) protects the right to meet and assemble with other union members and to express views at union meetings. Subsection (a)(3) protects against increases in union dues and assessments in certain circumstances. Subsection (a)(4) protects, against union encroachment, the right to sue and provide testimony. Subsection (b) nullifies any provision of any union constitution or bylaw inconsistent with subsection (a).

Thus, every provision of Section 411 provides rights and protections to union members "within the internal labor organization framework," *Hall v. Pacific*

---

[4] The Court may consider the CBA without converting the defendants' motion into one for summary judgment, because the document's contents are alleged in the amended complaint, the document is central to Count Two (since it is alleged to form the basis of the agreement to render the plaintiff ineligible for hire, (Doc. 14 at 2-3)), and he does not contest its authenticity. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

*Maritime Association*, 281 F. Supp. 54, 58 (N.D. Cal. 1968), without reference to, or suggestion of, applicability in the context of a collective bargaining grievance (which necessarily involves the employer). Indeed, subsection (a)(5) would appear to read awkwardly if applied in such a situation; the union member would be expected to prepare his own defense, even though a basic function of a union is to represent its members in such proceedings. Like its sister Court, "this Court can find nothing in § 411 which would indicate that Congress intended to write the procedural guarantees into grievance machinery set up under a collective bargaining agreement simply because the union participated in that grievance machinery and there was the possibility of abusing that power." *Hall*, 281 F. Supp. at 58.

Although addressing the somewhat different situation of retaliation by rogue union officers, the Supreme Court has declared that, "by using the phrase 'otherwise discipline,' Congress … meant … to denote *only* punishment authorized by the union as a collective entity *to enforce its rules*." *Breininger v. Sheet Metal Workers International Association Local Union No. 6*, 493 U.S. 67, 91 (1989) (emphasis added). The grievance made the basis of Count Two did not concern the plaintiff's alleged violation of a union rule but his alleged violation of employer rules (regarding misconduct and safety) enshrined in the CBA. (Doc. 14 at 2; Doc. 18-2 at 7, 9-10).

The defendants rely on both *Breininger* and *Hall*, yet the plaintiff ignores them both – indeed, he offers no counter at all beyond *ipse dixit*. (Doc. 20 at 1-2). Given the plaintiff's failure to respond to the defendants' argument, the Court has conducted no extensive review of the jurisprudence or legislative history, but it does appear from the development of Section 411(a)(5) and the floor debate surrounding it that Congress had in mind union disciplinary proceedings for violations of union rules. *See International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Foragers and Helpers, AFL-CIO v. Hardeman*, 401 U.S. 233, 243-44 (1971).

"Otherwise discipline" carries the same meaning in both Section 411(a)(5) and Section 529. *Breininger*, 493 U.S. at 90 n.13. It follows that the other forms of discipline listed in these sections – fine, suspension and expulsion – also carry the same meaning in both provisions. It follows further that Section 529, which so closely parallels Section 411(a)(5), likewise does not extend to conduct in the context of grievance proceedings under a collective bargaining agreement.

**C. Count Three.**

Count Three asserts violation of the union's duty of fair representation with respect to the hearing that resulted in his ineligibility for hire, his appeal of that ruling, and his internal grievances related to that process. (Doc. 14 at 5).

"It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement." *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 163 (1983). But when the union representing the employee breaches its duty of fair representation, the employee "may bring suit against both the employer and the union." *Id*. at 164. Such a suit is termed a "hybrid § 301/fair representation claim." *Id*. at 165. In such a suit, "[t]o prevail against either the company or the Union," the employee "must not only show that [his] discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *Id*. (internal quotes omitted). Although the plaintiff has sued only his union and not the employer, "the case he must prove is the same whether he sues one, the other, or both." *Id*.

**1. Plausibility.**

The defendants argue the amended complaint does not plausibly plead a breach of the CBA by the employer. (Doc. 18 at 14). According to the amended complaint, the plaintiff was informed by Bass's letter that he was deemed ineligible for hire due to unspecified misconduct on the job and use of a listening

or video/photo device. The amended complaint counters that the plaintiff's actual conduct consisted of nothing more than a "minor incident of horseplay." The letter said the plaintiff's ineligibility for hire was based on "just cause" within the CBA, while the amended complaint denies that his conduct furnished just cause. (Doc. 14 at 2-3, 5).

The defendants do not deny that an ineligibility determination unsupported by just cause would violate the CBA. Instead, they complain that the amended complaint offers only a raw assertion of no just cause. Assuming without deciding that the plaintiff was required to allege something indicating a lack of just cause in order to plausibly allege breach of the CBA, the defendants have not explained why the allegation that his only conduct was a minor bit of horseplay fails to satisfy any such requirement.

The defendants note that Bass's letter, as quoted in the amended complaint, informed the plaintiff that the Port Authority had requested the plaintiff's banishment from the hiring center properties. (Doc. 14 at 3). According to the defendants, this request establishes that the Port Authority found the incident "so significant" as to justify this step. (Doc. 18 at 14). Perhaps, but the defendants fail to explain how the Port Authority's action renders a breach of the CBA implausibly pleaded within the contemplation of *Twombly*.

In their reply brief, the defendants invite the Court to review the NLRB's determination of a charge the plaintiff filed in May 2019. (Doc. 21 at 4-5). Since the defendants did not mention that document in the argument section of their principal brief, (Doc. 18 at 14), it is not clear why the Court should honor their tardy request. Nor does it appear that the Court may properly consider this document on motion to dismiss; it is not referenced in the plaintiff's pleadings and thereafter falls outside the scope of *Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005),[5] and the defendants cite no authority for the proposition that such a document may

---

[5] *See* note 4, *supra*.

be judicially noticed. Even if judicial notice were taken, consideration of the document would not alter the Court's conclusion.

The NLRB determination states that, according to the agency investigation: the incident was videoed; the employer reviewed the video before seeking to permanently suspend the plaintiff; and the Port Authority also reviewed the video and thereafter rescinded the plaintiff's access badge. (Doc. 18-5). The defendants do not assert that the Court must accept the NLRB's statement as true, and they do not argue that the statement negates a breach of the CBA. Instead, they argue the statement places a burden on the plaintiff to plead additional facts in order to plausibly allege a breach "under these circumstances." (Doc. 21 at 5). Assuming without deciding that an NLRB determination could ever support such an argument, this one does not. The determination does not even identify the conduct supposedly captured on video; the defendants simply ask the Court to assume that, if the conduct was videoed, and if the employer viewed the video before seeking to remove the plaintiff, and if the Port Authority saw the video and decided to ban him, then the evidence of just cause must be so strong that the amended complaint cannot plausibly allege that the employer lacked it. That is both a *non sequitur* and a misreading of the plausibility requirement.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As noted, the amended complaint meets this standard (or, more precisely, the defendants have failed to show that it does not). The NLRB determination – if its description of events proves to be accurate – may or may not indicate "that actual proof [that the employer lacked just cause] is improbable" and "that a recovery is very remote and unlikely," but in either event the complaint "may proceed." *Twombly*, 550 U.S. at 556 (internal quotes omitted). The Court must indulge "the assumption that all the allegations in the complaint are true (even if doubtful in fact)," *id*. at

555, and the existence of evidence outside the complaint undermining those allegations does not render the pleading implausible, only less likely to succeed.

### 2. Limitations period.

The parties agree that the statute of limitations applicable to hybrid actions is six months. They disagree, however, over when that period began to run.

The amended complaint alleges that, on or about January 17, 2019, the union and the employer, without any notice to the plaintiff, agreed to his permanent ineligibility for hire. On January 17, the plaintiff delivered a written grievance in an attempt to return to work. On January 18, he requested Local 1410's vice president to represent him going forward. The same day, he filed a grievance against the employer and Local 1410, alleging discrimination and retaliation. The vice-president sought another hearing but was rebuffed; the plaintiff was not informed of this development. As of October 2019, the plaintiff had heard nothing regarding his grievance. (Doc. 14 at 2-3). This action was filed December 3, 2019.

> [T]he timeliness of the [hybrid] suit must be measured from the date on which the employee knew or should have known of the union's final action or the date on which the employee knew or should have known of the employer's final action, whichever occurs later. [When the employer's final action comes] before the union initiated its grievance proceeding, the timeliness of [the plaintiff's] suit depends on the date on which the union took final action. By final action we mean the point where the grievance procedure was exhausted or otherwise broke down to the employee's disadvantage.

*Proudfoot v. Seafarer's International Union*, 779 F.2d 1558, 1559 (11th Cir. 1986). "When the [hybrid] cause of action accrued is normally a question of fact …." *Hill v. Georgia Power Co.*, 786 F.2d 1071, 1075 (11th Cir. 1986).

The defendants first suggest that the amended complaint does not plausibly allege that the plaintiff timely filed his claim in this Court. (Doc. 18 at 15; Doc. 21 at 5). However, "[a] statute of limitations bar is an affirmative defense, and

plaintiffs are not required to negate an affirmative defense in their complaint." *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal quotes omitted).

The defendants next argue that the plaintiff's filing of an NLRB charge in May 2019 as a matter of law triggered the limitations period, which thus expired in November 2019. (Doc. 18 at 15-17).

The threshold question is whether the Court may consider the charge on motion to dismiss. The defendants say it may, because the original, superseded complaint (but not the amended, current version) referenced the charge. (Doc. 18 at 6 n.3). They rely on an unpublished Eleventh Circuit opinion for the proposition that "[a] district court ruling on a motion to dismiss [an amended complaint] is not required to disregard documents that the plaintiff himself filed with his original complaint." *Gross v. White*, 340 Fed. Appx. 527, 534 (11th Cir. 2009).

The *Gross* opinion is unpublished. "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007). There may be reason to doubt the persuasive force of *Gross*,[6] but for present purposes the Court assumes its proposition is correct as far as it goes. Because the plaintiff did not file the NLRB charge with his original complaint but merely referenced it, however, this case falls outside of *Gross*. Moreover, *Gross* does not require a court to consider a document filed only with a superseded complaint; it simply does not forbid it.

Even were these difficulties overcome, the defendants would come into conflict with *Day*, which requires that, in order to be considered on motion to

---

[6] *See Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007) (because "an amended complaint supersedes the initial complaint and becomes the operative pleading in the case," it "would be improper to bind plaintiffs by the prayer for relief in the initial pleading").

12

dismiss, a document not attached to the complaint must be "central to the plaintiff's claim." 400 F.3d at 1276. In *Day*, the document met this requirement because it was "a necessary part of [the plaintiffs'] effort to make out a claim." *Id*. Similarly, in *Financial Security Assurance, Inc. v. Stephens, Inc*., 500 F.3d 1276 (11th Cir. 2007), the document at issue was central to the plaintiff's claim because "the plaintiff would have had to offer the document in order to prove its case." *Id*. at 1285. The NLRB charge certainly does not meet that standard, as the original complaint mentions the charge only in passing: "Thereafter, the Plaintiff attempted multiple appeals within the Union and the [NLRB] until he finally received correspondence" in October 2019 advising him he was not a member of Local 1410. (Doc. 1 at 3). Indeed, the charge seems to have no bearing on the plaintiff's claim at all; certainly the defendants have identified none. On the contrary, the only significance they attach to the charge has nothing to do with the plaintiff's claim and everything to do with their affirmative defense to his claim. The defendants, who do not address the centrality requirement, have failed to demonstrate that it is satisfied.

       The defendants propose in the alternative that the Court take judicial notice of the charge. (Doc. 18 at 6 n.3). They identify two appellate courts that have done just that in the context of resolving when the limitations period governing hybrid actions began to run. Although the Eleventh Circuit appears not to have approved the taking of judicial notice in this situation, the Court assumes for present purposes that it is appropriate to do so.

       The defendants' motion fails nevertheless. According to the defendants, "federal courts have consistently held that the filing of an unfair labor practice charge establishes the date on which the Plaintiff knew of the accrual of his DFR claim." (Doc. 18 at 16). Except that is not what the authorities say. The single case cited by the defendants actually says that the charge must be "about a breach of the duty of fair representation." *Steward v. International Longshoremen's Association, Local No. 1408*, 2019 WL 5188524 at *11 (M.D. Fla. 2019). Every

13

single case *Steward* cites, in turn, involves a charge that expressly accused the union of violating its duty of fair representation.[7] The rule they follow appears to be thus: "An unbroken string of precedent supports the proposition that when a plaintiff accuses his union of a breach of the duty of fair representation in a charge filed with the NLRB, he has by then, as a matter of law, 'discovered' the grounds for his hybrid § 301 claim." *Simmons v. Howard University*, 157 F.3d 914, 916 (D.C. Cir. 1998).

The plaintiff's NLRB charge does not reference the duty of fair representation, much less accuse Local 1410 of breaching it. It therefore falls outside the ambit of the very cases on which the defendants rely. Since the defendants offer no authority for any more relaxed rule, they cannot establish that the plaintiff's fair representation claim is time-barred as a matter of law.

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss is **granted** with respect to Count Two, and with respect to Count One to the extent it purports to assert a claim regarding the ineligibility determination. These claims

---

[7] *Simmons v. Howard University*, 157 F.3d 914, 916 (D.C. Cir. 1998) (charge alleged that the union had "refuse[d] to provide fair representation to" the plaintiff); *id*. (in *Arriaga-Zayas v. International Ladies' Garment Workers' Union*, 835 F.2d 11 (1st Cir. 1987), the plaintiff filed an "informative motion" with the Puerto Rico Labor Relations Board "detailing [the] union's alleged failure adequately to represent them"); *Livingstone v. Schnuck Market, Inc*., 950 F.2d 579, 581 (8th Cir. 1991) ("In his NLRB charge against Local 610, appellant alleged that the union had … violated its duty of fair representation …."); *Gustafson v. Cornelius Co*., 724 F.2d 75, 79 (8th Cir. 1983) ("[A]ppellant filed an unfair labor practice charge with the local NLRB office alleging the union had breached its duty of fair representation …."); *Nicol v. United Steelworkers of America*, 331 Fed. Appx. 909, 910 (3rd Cir. 2009) (the plaintiff "filed unfair labor charges with the [NLRB] … claim[ing] the Union breached its duty of fair representation"); *Kavowras v. New York Times Co*., 2000 WL 1672338 at *4 (S.D.N.Y. 2000) ("In his NLRB charge, plaintiff charged that … the Union 'has failed and refused to represent'" the plaintiff), *affirmed in part and vacated in part*, 328 F.3d 50 (2nd Cir. 2003).

are **dismissed with prejudice**.  In all other respects, the motion to dismiss is **denied**.

DONE and ORDERED this 25th day of March, 2020.

<u>s/ WILLIAM H. STEELE</u>
UNITED STATES DISTRICT JUDGE